IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE BLASSENGALE | : | CIVIL ACTION |
| | : | NO.  11-3006 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

O'NEILL, J.                                                   SEPTEMBER 28, 2012

## MEMORANDUM

Presently before me is a motion to dismiss filed by defendants Special Agents Fedarcyk and Pacchioli, plaintiff Jermaine Blassengale's Motion to Deny Motion to Dismiss and Memorandum of Law in Support thereof, and the Special Agents' memorandum in Further Support of their Motion to Dismiss.  For the following reasons I will grant the motion in part, deny the motion in part, and permit Blassengale to amend his complaint as to those claims dismissed.[1]

## BACKGROUND[2]

Plaintiff Jermaine Blassengale, a state prisoner currently incarcerated at SCI-Pittsburgh, proceeding *pro se*, filed a complaint against numerous defendants including various state and federal law enforcement officials in their individual and official capacities, several private

---

[1] A motion to dismiss will typically be granted with leave to amend "unless [amendment] would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

[2] In reciting the factual background relevant to Blassengale's claims against the federal defendants, I take as true all well-pleaded factual allegations in the record. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Further, in deciding a motion to dismiss, it is within my discretion whether to consider evidence outside the complaint. Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).  Accordingly, the Court considers claims set forth in each of the documents docketed that make reference to the complaint, amending the complaint, or the various motions to dismiss in deciding this motion, as these documents taken together present a more detailed account of the allegations in this case.

companies and individuals, and the City of Philadelphia alleging false arrest, malicious

prosecution and other violations of his constitutional rights.  Blassengale's allegations stem from

his July 16, 2010 arrest based on an indictment issued by a grand jury on February 18, 2010 in

connection with his alleged participation in an insurance fraud scheme involving staged auto

accidents in the Philadelphia area from 2005-2007.  Blassengale's claims were dismissed against

all of the defendants except: Special Agent In Charge Janice Fedarcyk,  head of the FBI's

Philadelphia Field Office at all times relevant to this litigation; Special Agent Bryan Pacchioli,

the officer in charge of the insurance fraud investigation; and Officer Drexel Reid, Jr.[3]

     As part of the large insurance fraud investigation, a grand jury was convened on February

18, 2010.  It subsequently issued indictments for Jermaine Blassengale and a number of other

individuals and arrest warrants followed.[4]  On July 16, 2010, Blassengale was arrested while

incarcerated on unrelated state criminal charges in Philadelphia, Pennsylvania and moved for

detention to FDC-Philadelphia.  On or around October 19, 2010, Pacchioli and Assistant United

States Attorney Anthony Wzorek held a videoconference with Blassengale and his attorney and

Blassengale informed them that he was incarcerated during the time period relevant to the

charges against him (August 9, 2005-September 6, 2005).  See Decl. of Bryan Pacchioli, Dkt.

No. 31-1, ¶10-11.  Upon hearing this, Pacchioli was able to confirm that Blassengale was indeed

incarcerated during that time period.  Id. at ¶12-13.  The charges against Blassengale were then

dismissed October 21, 2010.  Id. at ¶14.  Blassengale contends that the July 16 arrest violated his

constitutional rights because it was not based upon probable cause.  In support of this contention,

---

[3] See Dkt. No. 9 (dismissing claims pursuant to 28. U.S.C. 1915(e)) and Dkt. No. 20 (dismissing Captain Brian Korn).  Drexel Reid Jr.'s Summons was returned unexecuted.  See Dkt. No. 24.

[4] Apparently plaintiff's brother Jerry Blassengale was also indicted as part of this investigation, and was arrested and eventually convicted.  See Decl. of Bryan Pacchioli, Dkt. No. 31-1.

Blassengale alleges that Pacchioli, "[as] the person that presented 'evidence'/testimony [to the grand jury that indicted Jermaine Blassengale]," "knowing[ly] used false evidence to obtain a tainted arrest,"[5] "fabricated the false allegations and went forward to prosecute Plaintiff on false evidence," and "unduly pressured or deceived prosecutors with false allegations."[6]  Moreover, Blassengale contends that his indictment was issued upon testimony by "an individual under investigation for fraud" and, impliedly argues that the investigators should have conducted further inquiry into Blassengale's involvement in the scheme, rather than relying on the grand jury testimony of an informant.[7]  Finally, Blassengale claims that

> [Officer Drexel Reid] and others were indicted, and I believe, because Officer
> Reid used my name, address, Social Security number and birth information when
> filing Official Police Report, I was also indicted even though I could prove my
> alibi defense during date and time stated within my Official Philadelphia Police
> Report.[8]

Essentially, Blassengale argues that the evidence against him was either fabricated by Pacchioli or an unnamed informant and that the FBI should have done further investigation after realizing that they were serving an arrest warrant upon an already incarcerated person to determine whether they had the right individual.[9]

In response, Fedarcyk argues that the claims against her should be dismissed because: 1) the complaint does not make any specific allegations regarding her conduct; and 2) she is entitled

---

[5] See Dkt. No. 32, ECF p. 3-4.

[6] See Dkt. No. 10, Complaint, ECF p. 21-22.

[7] See Dkt. No. 32, ECF p. 2

[8] See Dkt. No. 26, ECF p. 4.

[9] See Dkt. No. 32, ECF p. 3 ("[The] fact that Plaintiff, at time of arrest [sic], in an institution [sic], would led [sic] a 'prudent man' to, at the minimum, request information regarding the time frame of his (Plaintiff's) [sic] incarceration.")

to qualified immunity because Blassengale has not shown that her actions violated any of his clearly established constitutional rights.  Pacchioli argues that the false arrest and malicious prosecution claims against him arising under the Fourth Amendment should be dismissed because he had probable cause to arrest Blassengale.  Pacchioli also argues that Blassengale's claims against him arising under the Fifth and Eighth Amendments lack sufficient factual support to survive a motion to dismiss.  In the alternative, Pacchioli argues that he is entitled to qualified immunity because Blassengale's arrest followed a grand jury indictment and thus was supported by probable cause and did not violate any clearly established constitutional rights.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To

prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.  "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson, 551 U.S. 89, 93-94 (2007), quoting Twombly, 550 U.S. at 555-56.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "first, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Additionally, *pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. at 94.  *Pro se* complaints, especially from civil rights plaintiffs, should be read liberally, as prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims.  Alston v. Parker, 363 F.3d 229, 233–34 & n.6 (3d Cir. 2004).  Because Blassengale is a *pro se* litigant, I will consider his allegations of fact and make inferences where it is necessary and appropriate.

**DISCUSSION**

**I.      Blassengale Has Failed to State a <u>Bivens</u> Claim Against Special Agent Fedaryck**

        None of the material submitted by Blassengale alleges that Fedaryck personally

participated in the decision to present evidence to a grand jury regarding Blassengale's

participation in the insurance fraud scheme that provides the backdrop of this litigation.  In

<u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, the Supreme Court

recognized an implied private right of action for damages against federal officials who have

violated a person's Fourth Amendment rights.  403 U.S. 388 (1971).[10]  But unlike other legal

contexts, in a <u>Bivens</u> action, government officials may not be held liable for the unconstitutional

conduct of their subordinates under a theory of respondeat superior.  <u>Iqbal</u>, 556 U.S. at 676.

Rather, because vicarious liability is inapplicable to <u>Bivens</u> suits, a plaintiff must plead that each

Government-official defendant through the official's own individual actions has violated the

Constitution.  <u>Id</u>.  Stated another way, each Government official, his or her title notwithstanding,

is only liable for his or her own misconduct.  <u>Id</u>. at 677.  As Blassengale has not factually linked

Fedaryck's conduct with any of the alleged constitutional violations he has suffered, he has not

stated a claim against her.  This claim will be dismissed and Blassengale will be granted leave to

amend.

**II.     Blassengale Has Stated A Fourth Amendment Claim Against Special Agent
         Pacchioli for False Arrest**

        Blassengale has alleged sufficient facts to state a Fourth amendment claim against

Pacchioli.  The Fourth Amendment provides that people are "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants

---

[10] The Court has extended the <u>Bivens</u> implied right of action to suits for damages brought under the equal protection component of the Due Process Clause of the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980).  Since <u>Carlson</u>, however, the Court —has consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants.  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 68 (2001).

shall issue, but upon probable cause." U.S. Const. amend. IV. Government seizure of an

individual only violates the Fourth Amendment if the seizure was unreasonable. <u>United States v.</u>

<u>Coleman</u>, 383 F. App'x. 180, 184 (3d Cir. 2010). Ordinarily, a seizure must be effected by a

warrant based on probable cause to be reasonable under the Fourth Amendment. <u>Id</u>. at 182-183.

The government clearly seized plaintiff at the time of his July 16, 2010 arrest; therefore, the

reasonableness standard by which Special Agent Pacchioli's actions are to be judged is probable

cause. <u>See</u> Dkt. No. 31, ECF p. 9 (Def's Mtn. Dismiss).

### A. Blassengale Has Alleged Sufficient Facts to State a Claim for False Arrest Under the Fourth Amendment Against Special Agent Pacchioli

Blassengale has alleged sufficient facts to state a claim for false arrest against Pacchioli.

To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest;

and (2) that the arrest was made without probable cause. <u>Dowling v. Cit. of Phila.</u>, 855 F.2d 136,

141 (3d Cir. 1988). An arrest made without probable cause creates a cause of action for false

arrest under 42 U.S.C. § 1983. <u>Id</u>.[11] In the limited settings where <u>Bivens</u> does apply, the implied

cause of action is the "federal analog to suits brought against state officials under 42 U.S.C. §

1983." <u>Iqbal</u>, 556 U.S. at 675-76.

Ordinarily, it is reasonable for an officer to assume that a warrant has been issued for

probable cause. <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 272 (3d Cir. 2000). However, even

an apparently valid warrant does not render an officer immune from suit if his reliance on it is

unreasonable in light of the relevant circumstances. <u>Id</u>. at 273. A Fourth Amendment violation

also may be demonstrated if the officers executing the warrant knew they were arresting the

wrong person or acted in reckless disregard of facts that would have led to the conclusion that

---

[11] Similarly, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995).

they arrested the wrong person.  McHenry v. County of Delaware, No. 04-1011, 2005 WL 2789182, at *5 (E.D. Pa. Oct. 24, 2005); see also Doherty v. Haverkamp, No. 93-5256, 1997 U.S. Dist. LEXIS 7547, at *17-8 (E.D. Pa. May 27, 1997) ("Thus, the determination of a Fourth Amendment violation for false arrest depends, first and last, upon whether the arresting officers acted reasonably under all of the circumstances existing at the time and place of the arrest or detention.").  The determination of the ultimate liability question on which plaintiff bears the burden of proof, i.e., whether the arresting defendant(s) violated the Fourth Amendment by a particular arrest or detention, likewise depends upon the objective reasonableness of the arrest at issue.  Id.;[12] see also United States v. Mundy, 621 F.3d 283, 287 (3d Cir. 2010), citing Florida v. Jimeno, 500 U.S. 248, 250 (1991)) ("[t]he touchstone of the Fourth Amendment is reasonableness").

Based on the facts alleged by Blassengale, the following is clear: in February 2010, Blassengale was indicted by a grand jury and an arrest warrant was issued for his supposed role in a 2005-2007 insurance fraud scheme.  Blassengale does not allege irregularity in the grand jury proceeding, though he does allege that Pacchioli (and the grand jury) relied too heavily on the testimony of someone "under investigation for fraud."  See Dkt. No. 34, ECF p. 3. Blassengale was arrested while incarcerated on unrelated charges  in July 2010 by Pacchioli, who also led the investigation that produced the insurance fraud indictment.  In the interim, Blassengale alleges that no further inquiry was made into his current incarceration, or whether he

---

[12] Consequently, the determination of whether defendants have proved that they are protected by qualified immunity is often quite close to, if not co-extensive with, the factual/legal question of whether liability for a Constitutional violation may be imposed upon defendant(s). Doherty v. Haverkamp, No. 93-5256, 1997 U.S. Dist. LEXIS 7547, at *20 (E.D. Pa. May 27, 1997); see also Bistrian v. Levi, 10-3629, 2012 WL 4335958, at *9, quoting Iqbal, 556 U .S. at 673 (3d Cir. Sept. 24, 2012) ("the sufficiency of a plaintiff's allegations in a Bivens action is 'inextricably interwined [sic] with' and 'directly implicated by' the defense of qualified immunity.")

had been incarcerated in the past (i.e. whether he was incarcerated during the pertinent time period, August 9, 2005-September 6, 2004).  Id.  After being arrested, Blassengale was then moved to FDC-Philadelphia, where he remained at least until October 19, 2010, some three months after his arrest.  See Dkt. No. 10, Compl., ECF p. 17.  Upon dismissal of the charges against him, Blassengale returned to state prison. Id.; Decl. of Bryan Pacchioli, Dkt. No. 31-1, ¶15.  The record is unclear as to whether the October 19 conference was the first opportunity that Blassengale was allowed to present his alibi to the government.

While an an officer making an arrest pursuant to such a warrant generally is not required to investigate the arrestee's claim of innocence or mistaken identity, this does not mean that an officer may arrest an individual whom he knows is not the subject of the warrant or indefinitely detain an arrestee without attempting to resolve an apparent issue of identity.  Garcia v. Cnty. of Bucks, 155 F. Supp. 2d 259, 266 (E.D. Pa. 2001), citing Baker v. McCollan, 443 U.S. 137, 145–46 (1979) (finding that detention for three days  pursuant to a valid warrant in the face of repeated protests of innocence does not establish constitutional violation); see also Kennell v. Gates, 215 F.3d 825, 828 (8th Cir. 2000) (holding that even unreasonable refusal to investigate claim of mistaken identity by person arrested and detained for six days pursuant to facially valid warrant does not amount to constitutional violation).

> [A]n apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances. Such circumstances include, but are not limited to, other information that the officer possesses or to which he has reasonable access, and whether failing to make an immediate arrest creates a public threat or danger of flight.

Berg, 219 F.3d at 273.  Blassengale's allegations are sufficient to state a claim for false arrest under the Fourth Amendment.  Because he was already incarcerated, he posed no risk to the public, and there was no danger of Blassengale fleeing when Pacchioli attempted to arrest him. Pacchioli also had access to law enforcement databases and in the three month interval between the indictment and arrest (or even the time prior to serving the arrest warrant but after he determined that Blassengale was already incarcerated) may have inquired further into the duration of Blassengale's time in prison.  See Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st Cir. 1990) (noting that "the jury could have believed that [court employee] was reckless by not checking his own records before recirculating a warrant that was five months old."), Pena–Borrero v. Estremeda, 365 F.3d 7, 13 (1st Cir. 2004) ("While the officers arguably were simply negligent in failing to check on the warrant before they acted on it, following through on the arrest and detention once confronted with appellant's documents reflected a much more deliberate disregard for whether the warrant remained valid."); and Berg, 219 F.3d at 267-72 (noting that officer refused to look at release documents demonstrating that arrestee was no longer on parole and then holding summary judgment should not have been granted based on the existence of the warrant because the government officials who issued the warrant did not have probable cause to arrest Berg).  The indictment against Blassengale was not dismissed until after Blassengale met formally with Pacchioli and Assistant U.S. Attorney Wzorek on October 19, 2010; in the interim, Blassengale remained incarcerated in FDC-Philadelphia.[13]  This is not a situation in which a police officer was forced to make a split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.  See Saucier v. Katz, 533 U.S. 194, 205 (2001).

_____

[13] Blassengale actually asserts that the "detainer was only lifted" in March  2011, and it is unclear from the record when he was transferred back to a state correctional facility.  See Dkt. No. 10, Compl., ECF p. 19.

Drawing all favorable inferences from the record, I find that Blassengale's claim for false arrest can survive the instant motion to dismiss.

### B.  Blassengale Has Failed to State a Claim for Malicious Prosecution Against Special Agent Pacchioli

Blassengale has failed to allege sufficient facts to state a claim for malicious prosecution. To prove a Fourth Amendment malicious prosecution claim, Blassengale must show that:  (1) Pacchioli initiated a criminal proceeding; (2) the criminal proceeding ended in Blassengale's favor; (3) Pacchioli initiated the proceeding without probable cause; (4) Pacchioli acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) Blassengale suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr. 477 F.3d 75, 81-82 (3d Cir. 2007).  I need not resolve the question of probable cause because Blassengale has alleged no facts that Pacchioli acted maliciously or for a purpose other than bringing Blassengale to justice.  Blassengale's submissions allege that Pacchioli fabricated evidence or relied heavily on the questionable testimony of a compromised complaining witness to secure a grand jury indictment, but points to no facts in the record that support such allegations.  Thus, these assertions are mere legal conclusions, are owed no presumption of truth, and standing alone fail to demonstrate an entitlement to relief.  Iqbal, 556 U.S. at 678.[14]  This claim will be dismissed and Blassengale will be granted leave to amend.

---

[14] Though states of mind can be alleged generally, they still require some factual support.  As the Court in Iqbal explained:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally."  But "generally" is a relative term.  In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake.  Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid—

III.   **Blassengale Has Failed to State a 5th Amendment Claim Against Special Agent Pacchioli**

The Due Process Clause of the Fifth Amendment provides that "No person shall ... be deprived of life, liberty, or property, without due process of law . . . .  U.S. Constitution, am. V. The Supreme Court has explained that the Due Process Clause protects individuals against two types of government action: 1) "substantive due process," which prevents the government from engaging in conduct that "shocks the conscience," <u>Rochin v. California</u>, 342 U.S. 165, 172, (1952), or that  interferes with rights "implicit in the concept of ordered liberty," <u>Palko v. Connecticut</u>, 302 U.S. 319, 325-326 (1937); and 2) "procedural due process," which requires government action depriving a person of life, liberty, or property to be implemented in a fair manner,  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, (1976);  <u>see also</u> United <u>States v. Salerno</u>, 481 U.S. 739, 746 (1987).  It is unclear from his submissions whether Blassengale means to specifically allege either of these, but Pacchioli raises each in his motion to dismiss and so I will address them in turn.

### A.  Blassengale Has Failed to State a Substantive Due Process Claim

Blassengale's submissions do not state a substantive due process claim.  The substantive due process guarantee protects against government power arbitrarily and oppressively exercised. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998).  Only state action that shocks the conscience can constitute a violation of substantive due process.  <u>Id.</u>  Ordinary negligence is never conscience-shocking, but the Court left open the possibility that recklessness or gross negligence could be.  <u>Id</u>. at 848-49.  In analyzing claims against government officials, the Court

_____

though still operative—strictures of Rule 8.  And Rule 8 does not
empower respondent to plead the bare elements of his cause of action,
affix the label " general allegation," and expect his complaint to survive a
motion to dismiss.

556 U.S. at 687.

of Appeals has read <u>Lewis</u> as requiring "more culpability . . . to shock the conscience to the

extent that state actors are required to act promptly and under pressure," adding that "the same is

true to the extent that responsibilities of the state actors require a judgment between competing,

legitimate interests." <u>Schieber v. City of Philadelphia</u>, 320 F.3d 409, 419 (3d Cir. 2003). I am

mindful of the Supreme Court's requirement of "an exact analysis of circumstances before any

abuse of power is condemned as conscience shocking." <u>Lewis</u>, 523 U.S. at 849. While

Blassengale alleges that Pacchioli's malice toward him led the officer to fabricate evidence

against him, he has not supported this contention with any facts that demonstrate that Pacchioli

abused the grand jury process or arbitrarily singled Blassengale out for prosecution. Rather, the

submissions before the court reveal that Blassengale was one of a number of people indicted in a

wider investigation. Blassengale also concedes that when the facts ultimately revealed he had an

alibi, the charges against him were dismissed. Thus, under the allegations facts before the Court,

Pacchioli's actions do not rise to the conscience-shocking level.[15] This claim will be dismissed

and Blassengale will be granted leave to amend.

---

[15] Blassengale's allegations likewise do not establish that Pacchioli is liable under a special relationship exception to the Due Process clause. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . " <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.</u>, 489 U.S. 189, 200 (1989). Although Blassengale was already in custody at the time of his arrest, he does not allege that the manner of his federal incarceration was conducted in a manner that shocks the conscience or harmed him in any way other than the mental anguish caused by wrongful detention. Further, Blassengale does not allege that his incarceration at FDC-Philadelphia exposed him to excessive risk of harm, or that his captors were indifferent to any risk of harm posed to him by prison conditions or other inmates.

Similarly, Blassengale's allegations do not establish that Pacchioli is liable under the state-created danger theory. The theory recognizes that a substantive due process violation may occur "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" <u>Navolio v. Lawrence Cnty.</u>, 406 F. App'x 619, 624 (3d Cir. 2011), <u>quoting</u>

### B.  Blassengale Has Not Stated a Procedural Due Process Claim

Blassengale has not alleged sufficient facts to establish a procedural due process claim.

Procedural due process generally guarantees that the state will not deprive someone of a

protected interest in life, liberty or property without due process of law.  U.S. Const. am. XIV;

Brooks v. DiGuglielmo, No. 05-4588, 2008 WL 5187529, at *6 (E.D. Pa. Dec. 9, 2008).  There

can be no deprivation of due process in the absence of a protected interest.  Shoats v. Horn, 213

F.3d 140, 143 (3d Cir. 2000).  For prison inmates, these interests will generally be limited to

freedom from restraint which impose atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 484 (1995).  Blassengale

does allege that the fact that the charges against him were not dismissed with prejudice has had

implications for his parole and probation status and that he has not gotten credit for time spent in

FDC-Philadelphia.  See Docket No. 32, ECF p. 3.  However, these assertions are not supported

by any factual matter.  Further, Blassengale does not allege that he was denied any procedural

protections following his transfer to FDC-Philadelphia.  While the Court of Appeals instructs

---

Bight v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006).  To establish a state-created
danger claim, the following essential elements must be met: "(1) the harm ultimately caused was
foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the
conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff
was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons
subjected to the potential harm brought about by the state's actions, as opposed to a member of
the public in general; and (4) a state actor affirmatively used his or her authority in a way that
created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the
state not acted at all." Marvel v. County of Delaware, 397 F. App'x 785, 789 (3d Cir. 2010).  In a
case where state actors have the time to make unhurried judgments, the level of culpability
required to shock the conscience is deliberate indifference.  Sanford v. Stiles, 456 F.3d 298, 309
(3d Cir. 2006).  In the state-created danger context, deliberate indifference may not require
Pacchioli's actual knowledge of a risk of harm "when the risk is so obvious that it should be
known." Id. at 309–310.  However, there is no basis in the record to conclude that Pacchioli or
anyone at FDC-Philadelphia disregarded any risks that Blassengale may have been exposed to
there as a result of his incarceration.  Thus, Blassengale has not stated a claim under the state-
created danger theory.

that an inmate's "interest in avoiding wrongful detention [i]s obviously a strong one" and "to the extent possible the inmate be afforded predeprivation process," Blassengale has not alleged facts suggesting that he was denied any procedural determinations as to the probity of his transfer into federal detention.  Sample v. Diecks, 885 F.2d 1099, 1116 (3d Cir. 1989), citing Mathews v. Eldridge, 424 U.S. at 335.  Without factual allegations regarding any process he was denied, Blassengale has not stated a procedural due process claim.  Finally, Blassengale does not allege that his incarceration at FDC-Philadelphia imposed hardship upon him beyond that imposed by his state criminal incarceration.  Without more, Blassengale's submissions do not support his procedural due process claim.  This claim will be dismissed and Blassengale will be granted leave to amend.

### C. Blassengale Has Failed to State a Claim Under the Equal Protection Clause

Blassengale has failed to plead any facts that support the contention that his right to equal protection has been violated.   Where an individual claims he has been subject to invidious discrimination in contravention of the 5th Amendment, the Supreme Court has made it clear that plaintiff must plead and prove that the defendant acted with discriminatory purpose.  Iqbal, 556 U.S. at 676.  To state a claim based on a violation of a clearly established right to be free from discrimination on account of race or religion, Blassengale must plead sufficient factual matter to show that Pacchioli investigated and presented evidence to the grand jury about Blassengale not for a neutral reason but for the purpose of discriminating on account of his race or religion.  Id. at 677.  Blassengale has not done so: his assertions that "discrimination 'motivated by racial bias'" and his "deep feeling that his religious belief as a muslim [sic] was a part of the discrimination" are conclusory allegations that do not support an inference of invidious discrimination.  See Dkt.

No. 10, Compl., ECF p. 18.  Without more, Blassengale has failed to state a claim under the equal protection clause.  Iqbal 556 U.S. at 677.

## IV.    Blassengale Has Failed to State an Eighth Amendment Claim Against Special Agent Pacchioli

Blassengale has not alleged sufficient facts to state a claim under the Eighth Amendment. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.  Wilson v. Seiter, 501 U.S. 294, 296–97 (1991).  Prison conditions constitute cruel and unusual punishment if they cause unquestioned and serious deprivations of basic human needs that deprive inmates of the minimal civilized measure of life's necessities. Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 417-18 (3d Cir. 2000).  The government assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety when it takes a person into custody against his or her will.  Id.  "To demonstrate a deprivation of his basic human needs, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference."  Id.  Blassengale has not alleged that the conditions at FDC-Philadelphia failed to meet his basic human needs.  He has also not alleged any facts against Pacchioli that connect Pacchioli to any conditions at FDC-Philadelphia.

Instead, in his submissions, Blassengale appears to assert an Eighth Amendment claim for incarceration without penological justification.  The Court of Appeals has instructed that, in order to state a viable Eighth Amendment claim for "incarceration without penological justification," a complaint must allege facts that would demonstrate the following three elements:

> (1) an official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to

> the problem and the unjustified detention. Relevant circumstances in assessing these factors are the scope of the official's duties and the role the official played in the life of the prison.

Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010). Blassengale has not alleged any facts as to how he endeavored to communicate his alibi to Pacchioli. He has not demonstrated that Pacchioli, either at the time of the arrest or over the course of Blassengale's detention at FDC-Philadelphia, was aware that Blassengale was incarcerated during the period of his alleged participation in the insurance fraud scheme. Nor has Blassengale described his efforts to communicate the fact of his innocence to Pacchioli following his transfer to FDC-Philadelphia. Absent allegations that he told Pacchioli about his alibi and that Pacchioli failed to investigate prior to the November videoconference, Blassengale's submissions do not state a claim under the Eighth Amendment. This claim will be dismissed and Blassengale will be granted leave to amend.

## V.   Qualified Immunity Does Not Protect Special Agent Pacchioli From Suit Because Blassengale Has Raised Factual Questions As to Whether Pacchioli's Conduct was Objectively Reasonable

Pacchioli contends that I must dismiss Blassengale's complaint because he is protected by qualified immunity. I disagree. Blassengale's allegations raise factual questions as to whether Pacchioli's conduct was objectively reasonable.

Once the affirmative defense of qualified immunity is advanced, the allegations of the complaint take on great importance in a lawsuit. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Behrens v. Pelletier, 516 U.S. 299, 310 (1996) ("At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal

reasonableness'").  The affirmative defense of qualified immunity should be applied at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only.  See Hunter v. Bryant, 502 U.S. 224, 227 ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."); Mitchell, 472 U.S. at 526 (entitlement of qualified immunity is "immunity from suit rather than a mere defense to liability; and...is effectively lost if a case is erroneously permitted to go to trial"). "[U]nil this threshold immunity question is resolved, discovery should not be allowed."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Where the qualified immunity issue is centered on whether a violation of rights has occurred at all, or on whether the rights allegedly invaded were clearly established at the time the alleged violation occurred, the Court is confronted with a pure issue of law which is appropriately resolved at the earliest possible stage of the case.  Ordstti; In re: City of Phila. Litigation, 49 F.3d 945, 961 (3rd Cir. 1995).  Where, however, the applicability of qualified immunity turns on the facts known by public officials at the time of the challenged conduct, and there are material issues in dispute with respect to such facts and/or with respect to a defendants' knowledge thereof, the issue of qualified immunity is subject to determination by the factfinder at trial.[16]  Doherty, 1997 U.S. Dist. LEXIS 7547, at *19 (citations and quotation marks omitted). In the face of a motion to dismiss for failure to state a claim based on qualified immunity, a court's only duty is to construe the facts in the manner most favorable to plaintiff, in order to determine whether the official behavior he describes falls outside the cloak of official immunity. Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).

---

[16] Moreover, "generally, the question of probable cause in a section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts." Henderson v. City of Phila., 853 F. Supp. 2d 514 (E.D. Pa. 2012), citing Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000).

I must consider whether the facts alleged show that Pacchioli's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If no constitutional right would have been violated were the allegations established, further inquiries concerning qualified immunity is unnecessary. Id. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established. Id. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Id.[17] In the context of this case, the question is whether "a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997). The inquiry is an objective one; the arresting officer's subjective beliefs about the existence of probable cause are not relevant. Anderson v. Creighton, 483 U.S. 635, 641 (1987). In considering claims of qualified immunity, courts are sensitive to "[t]he broad range of reasonable professional judgment accorded" law enforcement officials in the § 1983 context. Berg, 219 F.3d at 272. Moreover, it is not sufficient that the right at issue be clearly established as a general matter; rather, the question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights. Griffin-El v. Beard, 411 F. App'x. 517, 519 (3d Cir. 2011). Consistent with the instruction that qualified immunity be assessed in the context of each individual defendant's specific conduct, the Court of Appeals requires an analysis of the facts adduced concerning the conduct of the official who claims immunity, an identification of the factual issues pertinent to each official claiming qualified immunity and an

---

[17] "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

analysis of the law as it applies to the determination of each official's qualified immunity claim.[18]  Id.

At the time of Blassengale's arrest, it was clearly established that an arrest can only be made with probable cause.  Orsatti v. N. J. State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Ordinarily, it is reasonable for an officer to assume that a warrant has been issued for probable cause.  Berg, 219 F.3d at 272.  As the Supreme Court explained in Baker,

> given the requirements that arrest be made only on probable cause … we do not think a[n officer] executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.

443 U.S. at 145–46.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.  Id. at 146.  Therefore, courts have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant.  Berg, 219 F.3d at 272-73.  Nevertheless, an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances.  Id. at 173.[19]

There remain factual questions as to whether Pacchioli's conduct was reasonable under the circumstances.  See Schrob v. Catterson, 948 F.2d 1402, 1421 (3d Cir. 1991) (affirming district court's denial of motion to dismiss on the basis of qualified immunity where the case was "better decided on summary judgment" because "supplementation of the record was necessary"); see also, Brown v. United States, 851 F.2d 615, 619–20 (3d Cir. 1988) (finding that the record provided insufficient basis for resolution of qualified immunity at the motion to dismiss stage),

---

[18]     Because Blassengale has failed to plead any factual materials linking Fedarcyk to the alleged constitutional violations he has suffered, the Court need not reach the question of her qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).

[19]     See Section II. A., supra.

and <u>Kulwicki v Dawson</u>, 969 F.2d 1454, 1468 (3d Cir. 1992) (affirming district court's denial of motion to dismiss on basis of qualified immunity because officer's knowledge at the time the charges were filed was not apparent from the record).  Blassengale in his submissions alleges that the indictment was issued without a proper investigation or predicated upon fabricated evidence or testimony of questionable reliability.  Additionally, a reasonable officer, upon discovery of Blassengale's status as a state prisoner, prior to serving the arrest warrant might have reasonably conducted further inquiry into the reasons for and chronology of Blassengale's incarceration.  While reliance on an arrest warrant issued following a grand jury indictment is often reasonable, it is unclear that Pacchioli's lack of further inquiry into Blassengale's penological history was reasonable under these circumstances especially given the length of the interval of time between the grand jury indictment and Blassengale's arrest.  Moreover, that Blassengale remained incarcerated for several months in FDC-Philadelphia following his arrest, despite his concededly valid alibi also presents a question as to the reasonableness of Pacchioli's conduct.  Without more development of these issues, dismissal based upon qualified immunity is not appropriate.

An appropriate Order follows.